# In the United States Court of Federal Claims

No. 21-1497T
(Filed: May 9, 2022)

## FOR PUBLICATION

| | |
|---|---|
| **JEFFREY K. SETO,** *Plaintiff,* v. **UNITED STATES,** *Defendant.* | Tax Refund: Treasury Offset Program; CARES Act; Illegal Exaction |

*Jeffrey K. Seto*, *pro se* Plaintiff.

*Brendan D. Jordan*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington D.C., for Defendant. With him on the briefs were *Brian M. Boynton*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.

## OPINION AND ORDER

**BONILLA, Judge.**

      Plaintiff *pro se* Jeffrey K. Seto initiated this action to challenge, among other things, the decision of the Internal Revenue Service (IRS), a bureau of the United States Department of the Treasury, to apply his 2019 federal income tax refund to offset (in part) over $170,000 in defaulted student loans (inclusive of interest and fees & costs) dating back nearly 30 years. In support of his claim, Mr. Seto first contends that the United States Department of Education failed to notify him that his student loans were in default. Next, Mr. Seto avers that the IRS unlawfully offset his refund in light of fact that, had he filed his 2019 federal income tax return later in the tax season, his refund would not have been withheld due to certain financial relief provisions included in the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020). Finally, Mr. Seto contends that the Department of Education erred in applying his monthly payments toward interest rather than to pay down the principal, resulting in the continuous assessment of compound interest.

In addition to monetary damages (i.e., the release of his 2019 federal income tax refund in the net amount of $7,213),[1] Mr. Seto seeks an order of this Court directing the Department of Education to retroactively recalculate Mr. Seto's outstanding student loan debt by applying all payments made since 2013 toward the principal of his student loans rather than the interest, and to re-enroll Mr. Seto in the Department of Education's Loan Rehabilitation Program.

Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) addressing the propriety of the IRS's decision to apply Mr. Seto's 2019 federal income tax refund to offset his outstanding student loan debt. The United States also seeks dismissal of Mr. Seto's claims for injunctive relief for lack of subject matter jurisdiction under RCFC 12(b)(1). For the reasons that follow, defendant's dispositive motion is **GRANTED** and plaintiff's dispositive cross-motion is **DENIED**.

## BACKGROUND

A.   Student Loan History and Loan Rehabilitation Program

Between 1981 and 2002, Mr. Seto took out a series of federal student loans to finance his education. He currently has eight outstanding student loans under the William D. Ford Federal Direct Loan Program (f/k/a Direct Stafford Loan Program) and the Federal Family Education Loan (FFEL) Program. All are in default. Relevant here, as of December 5, 2018, Mr. Seto's "Total Balance" was $170,264.67, broken down into principal balance ($95,616.99), interest ($48,772.99), and fees & costs ($25,874.68). ECF 16-1 at A9.

In 2005, after initially defaulting on the student loans in issue, Mr. Seto's account was referred to the Department of Education's Default Resolution Group. Thereafter, in March 2014, Mr. Seto enrolled in the Department of Education's Loan Rehabilitation Program and executed a Repayment Agreement. Under the terms of the Repayment Agreement, Mr. Seto was required to make at least nine monthly payments of approximately $180 to rehabilitate his student loans. The Repayment Agreement explained that following the specified rehabilitation period, the loans would be sold to a new lender, who "will establish a new due date and will calculate a new monthly payment amount based upon the balance owed at the time of sale. The amount of the required monthly installment payment *may substantially increase*." *Id.* at A1 (emphasis added).

Mr. Seto successfully completed the Loan Rehabilitation Program and, consequently, his outstanding student loans were transferred to Fedloan Servicing on December 3, 2014. The next day, Fedloan Servicing sent Mr. Seto two letters advising him of the details of his outstanding student loans (e.g., loan program, owner, disbursement date, principal balance, interest rate, loan status) as well as his repayment options. The Fedloan Servicing letters further explained to Mr. Seto that his monthly payment would remain the same as it was during the Rehabilitation Program for an additional three months, and that during this introductory period,

---

[1] The full amount of Mr. Seto's 2019 federal income tax refund was $9,288. ECF 16-1 at A179. In July 2020, the Department of Education refunded $2,075 to the Setos in connection with a verified innocent spouse claim. *See id.* at A116-17, 178.

2

Mr. Seto could elect a new repayment plan from among those offered. The Fedloan Servicing letters specifically noted:

> If you do not choose a new repayment plan, your rehabilitated loans with either be:
>
> 1. Placed on a standard repayment plan. This means your payment will be the same each month. *Please note your standard payment amount may be significantly higher than your payment amount during the rehabilitation process.*
> 2. Placed on the same repayment plan as your other Direct Loans, if you have any that we are currently servicing.

*Id.* at A3, A5 (emphasis added). Between December 2014 and February 2015, Mr. Seto's monthly payment to Fedloan Servicing was $176.39. *Id.* at A120-25.

Following the three-month introductory period, on February 17, 2015 – after Mr. Seto failed to select a new repayment plan – Fedloan Servicing informed Mr. Seto that he had been placed on a standard repayment plan and that his new monthly payment was $1,281.47. *Id.* at A126-29. Although Mr. Seto continued making monthly payments to Fedloan Servicing, his payments were well below the standard repayment plan amount. *See id.* at A130-77. Indeed, by December 2015 – ten months into the new repayment plan – Mr. Seto's "Amount Past Due" totaled $10,956.36. *Id.* at A176.

        B.      <u>Notices of Delinquency and Default</u>

Between March and December 2015, Fedloan Servicing sent Mr. Seto detailed monthly bills and separate delinquency notices informing him that he was in arrears and headed toward default. *Id.* at A130-77. In the interim, on May 14, 2015, Fedloan Servicing notified Mr. Seto that his continuing failure to make required minimum monthly payments would cause his loans to default on December 10, 2015. *Id.* at A137. On December 14, 2015, Fedloan Servicing notified Mr. Seto that his failure to comply with the terms and conditions of his loan repayment schedule, coupled with his decision to ignore the company's repeated efforts to resolve his delinquency, required that he remit payment in the full amount of $137,866.70 by January 11, 2016. *Id.* at A174-75. The December 14, 2015 notice further informed Mr. Seto that his failure to repay this debt in full within 30 days or contact Fedloan Servicing to make alternative arrangements, "will cause these loans to default." *Id.* at A174. Mr. Seto did neither.

On January 15, 2016, the Department of Education formally issued Mr. Seto a formal Notice of Default. *Id.* at A7-8. The Notice of Default explained to Mr. Seto:

> Consequences of default include ineligibility for federal student financial aid and most other federal benefits programs. In addition, *your account may soon be sent to the U.S. Department of Education's Debt Collections Service for additional collection activities, which may include*:

3

- Wage garnishment.
- *Offset your federal student loan debt against your federal tax return.*
- Possible legal action by the United States Department of Justice.
- Assessment of collection costs and fees.
- Credit bureaus will be notified, and your credit rating may suffer.

*Id.* at A7 (emphasis added). Between May 2016 and December 2018, the Department of Education sent Mr. Seto a series of follow-up requests for payment and reminders of the potential consequences of his continued nonpayment outlined in the Notice of Default. *Id.* at A9-11, A75-80. Instead, Mr. Seto continued making monthly payments consistent with his initial payments under the Loan Rehabilitation Program.

      C.      Federal Income Tax Refund Offset

On December 5, 2018, the Department of Education informed Mr. Seto:

> The Department intends to refer your [student loan] debt to the U.S. Department of the Treasury *for collection through Treasury offset* against all payment streams that are currently authorized by law or that become authorized in the future. *These payment streams may include, but are not limited to, Federal and State tax refunds*, Social Security benefits, and Federal travel reimbursements.

*Id.* at A9 (emphasis added). On February 15, 2019, Mr. Seto's outstanding student loan debt was certified to Department of the Treasury. *Id.* at A178.

Thereafter, on July 19, 2019, Mr. Seto purchased a rooftop solar energy system for his home at a total cost of $26,939, financed over ten years with Loanpal. ECF 20 at Exs. 1-2. Mr. Seto's decision to invest in renewable energy was inspired, in part, by the Federal Investment Tax Credit (commonly known as the Solar Tax Credit) which, in 2019, granted taxpayers a residential energy efficient property credit equal to thirty percent (30%) of the cost of rooftop solar energy systems. *See* https://www.irs.gov/newsroom/energy-incentives-for-individuals-residential-property-updated-questions-and-answers. Indeed, in accordance with the terms of the Loanpal Loan Closing Certificate, Mr. Seto's initial monthly payment of $187.22 would increase to $277.05 on March 4, 2021, if he failed to pay down the loan principal by $10,094.71 and meet the "target balance" of $16,844.29 by that date. ECF 20 at Ex. 1.

In January 2020, Mr. Seto filed his 2019 federal income tax return with the IRS, claiming a $7,994 Federal Investment Tax Credit for the purchase and installation of the solar energy system and a net refund of $9,288. By letter dated February 20, 2020, the Department of the Treasury, Bureau of the Fiscal Service, notified Mr. Seto that his 2019 federal income tax refund in the amount of $9,288 had been applied to offset (in part) his outstanding student loan debt. ECF 16-1 at A179. Thereafter, on July 16, 2020, following the Setos' submission of a verified innocent spouse claim with the IRS, the Department of Education refunded them $2,075. *See id.* at A116-17, 178.

# DISCUSSION

A.   Cross-Motions for Summary Judgment: 2019 Federal Income Tax Refund

   1.   Standard of Review

Under RCFC 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts," in turn, are those which might affect the outcome of the case. *Id.* In deciding motions for summary judgment, particularly where, as here, the parties filed cross-motions for summary judgment, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

   2.   Illegal Exaction Claim

In his complaint and dispositive cross-motion, Mr. Seto cites the Due Process Clause of the Fifth Amendment to the United States Constitution as the basis for his claim. ECF 1 at 4; ECF 20 at 3. The Due Process Clause is not money-mandating and, thus, claims asserting this constitutional provision are generally not properly before this this Court. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 803 (Fed. Cir. 1993) (citing *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989)). However, as suggested by the government in its October 1, 2021 status report, *see* ECF 10 at 1, Mr. Seto's claim is appropriately considered under this Court's illegal exaction jurisprudence. *See, e.g., Pennoni v. United States*, 79 Fed. Cl. 552, 560-61 (2007) (citing *New York Life Insur. Co. v. United States*, 118 F.3d 1553, 1556 (Fed. Cir. 1997) (citing *United States v. Testan*, 424 U.S. 392 (1976); *Eastport S.S. Corp. v. United States*, 372 F.2d 1002 (Ct. Cl. 1967))); *see also Embrey v. United States*, No. 19-740, 2020 WL 732184, at *2 (Fed. Cl. Dec. 11, 2020) ("A *pro se* litigant's complaint is to be construed liberally.") (citing *Erickson v. Pardus*, 551 U.S. 89, 98 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))); *Harris v. Shinseki*, 704 F.3d 946, 948 (Fed. Cir. 2013)).

An illegal exaction occurs when money is "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (cleaned up). "[A] plaintiff claiming jurisdiction based on an illegal exaction must demonstrate that 1) the exaction was directly caused by a misapplication of a statute, and 2) the remedy implicit in the statute is the return of the funds." *Pennoni*, 79 Fed. Cl. at 561 (citing *Norman*, 429 F.3d at 1095-96). The record presented in this case is clear: the government's actions did not constitute an illegal exaction entitling Mr. Seto to relief. The Court will address the arguments advanced by Mr. Seto seriatim.

First, Mr. Seto asserts that the Department of Education failed to notify him that his student loans were in default, claiming that he first learned of the default after the IRS applied his 2019 federal income tax refund to offset his outstanding student loan debt. Mr. Seto's assertion is belied by the record presented and borders on sanctionable under RCFC 11.

The official "Notice of Default" issued by the Department of Education on January 16, 2016, was mailed to the same address Mr. Seto used to file his Complaint in this case as well as the address cited and listed in his Cross-Motion for Summary Judgment. *Compare* ECF 16-1 at A7 *with* ECF 1 at 5 *and* ECF 20 at 7, 10. The same is true for the: (1) Department of Education's follow-up requests for payment and reminders of the potential consequences of his continued nonpayment outlined in the Notice of Default sent to Mr. Seto between May 2016 and December 2018; and (2) the monthly detailed bills and separate delinquency notices Fedloan Servicing sent Mr. Seto between March 2015 and January 2016 informing him that he was in arrears and headed toward default. *See* ECF 16-1 at A9-11, A75-80, A130-77. Mr. Seto's decisions to ignore these notices do not equate to the government's failure to notify him.

Similarly unavailing is Mr. Seto's reliance upon the CARES Act. Although the CARES Act temporarily suspended collection actions for borrowers with defaulted federal student loans, including federal income tax refund offsets, the statute did not go into effect until the President signed the bill into law on March 27, 2020. Pub. L. No. 116-136, 134 Stat. 281 (2020). Mr. Seto filed his 2019 federal income tax return in January 2020. ECF 1 at 3. The IRS processed his return and applied his refund to offset a portion of his outstanding student loan debt on or before February 20, 2020, when Mr. Seto was formally notified of the government's action. ECF 16-1 at A179. Nothing in the CARES Act states or clearly suggests that the student loan temporary relief provisions applied retroactively. Absent such statutory language, courts cannot construe laws and implementing regulations to have retroactive effect. *Hicks v. Merit Sys. Prot. Bd.*, 819 F.3d 1318, 1321 (Fed. Cir. 2016) ("Retroactivity is not favored in the law and congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. Accordingly, we will construe a statute to avoid retroactivity unless there is clear evidence that Congress intended otherwise.") (cleaned up). Consequently, the enactment of the CARES Act has no bearing on Mr. Seto's illegal exaction claim.

Next, contrary to Mr. Seto's argument, the Department of Education did not improperly apply his monthly payments to the interest on his student loans rather than to pay down the principal. By regulation, under the Federal Direct Loan Program, save specified repayment plans not applicable here, "the Secretary applies any payment first to any accrued charges and collection costs, then to any outstanding interest, and then to outstanding principal." 34 C.F.R. § 685.211(a)(1). The regulation governing FFEL loans similarly provides: "the lender may credit the entire payment amount first to any late charges accrued or collection costs and then to any outstanding interest and then to outstanding principal." *Id.* § 682.209(b)(1). Accordingly, under applicable law, Mr. Seto's monthly student loan payments were properly applied to accruing interest, thereafter compounded, rather than to pay down the loan principal.

Finally, Congress specifically authorized all federal agencies to coordinate with the Department of the Treasury to collect past-due debts through offsets to federal disbursements and accounts payable, including federal income tax refunds. *See* 31 U.S.C. §§ 3176(c)(6)(A), 3720A(a). To implement these statutes, the Department of the Treasury established the Treasury Offset Program (TOP), administered by the Bureau of Fiscal Service, to "collect[] past-due (delinquent) debts (for example, child support) that people owe to state and federal agencies. *See* https://fiscal.treasury.gov/top/. More specifically, "TOP matches people and businesses who owe delinquent debts with money that federal agencies are paying (for example, a tax refund).

To the extent allowed by law, when a match happens, TOP withholds (offsets) money to pay the delinquent debts." *Id.* This Program is codified in 31 C.F.R. § 285.5 (Centralized offset of Federal payments to collect nontax debts owed to the United States). Under TOP, the United States possesses the right to apply monies held by it to extinguish debts due to it. *See United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947).

Moreover, the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, requires federal agencies owed eligible delinquent nontax debts (referred to as "creditor agencies") to refer those debts to the Department of the Treasury for offset. 26 U.S.C. § 6402(d); 31 U.S.C. §§ 3716, 3720A. As a creditor agency, the Department of Education submits delinquent debts, including defaulted student loans, to the Department of the Treasury for inclusion in TOP by certifying that such debts qualify for collection by offset. *See* 26 U.S.C. § 6402(d); 31 U.S.C. §§ 3716(c), § 3720A(b); 31 C.F.R. §§ 285.2, 285.4 & 285.5. The Department of the Treasury then matches payments (e.g., federal benefits payments, federal income tax refunds) from "payment agencies" (e.g., Social Security Administration, IRS) with delinquent debts held by "creditor agencies" (e.g., Department of Education). 31 C.F.R. §§ 285.5(b)(2) and 285.4(c). If there is a match, the Department of the Treasury offsets all or a portion of the federal payment, pays the offset to the creditor agency, and sends a notice and any remainder to the payee. 31 C.F.R. § 285.5(c) & (h).

The record presented in this case is a textbook application of TOP. At the time of the IRS offset, Mr. Seto's outstanding student loans were delinquent for 274 days, well in excess of the 120-day delinquency required by regulation. *Compare* 31 C.F.R. § 285.5(d)(1) *with* ECF 16-1 at A8. On February 15, 2019, the Department of Education certified Mr. Seto's student loan debt to the Department of the Treasury for inclusion in TOP.[2] *Id.* at A178. The Department of the Treasury then properly matched the IRS's impending remittance of Mr. Seto's 2019 federal income tax refund with his delinquent student loan debt held by the Department of Education. The Department of Education, the Department of the Treasury, and the IRS adhered to the governing statutes and regulations. At bottom, Mr. Seto's 2019 federal income tax refund was properly offset to satisfy a portion of his defaulted federal student loan debt. *Id.* at A179.

    B.    <u>Motion to Dismiss: Lack of Subject Matter Jurisdiction</u>

        1.  <u>Standard of Review</u>

Under RCFC 12(b)(1), this Court must dismiss a claim where it lacks subject matter jurisdiction. "In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."

---

[2] Mr. Seto contends that the IRS's failure to similarly apply his 2018 federal income tax refund in the amount of $1,358 to offset his outstanding student loan debt should estop the government from withholding his 2019 federal income tax refund; specifically, Mr. Seto asserts that he relied upon the IRS's prior inaction in purchasing the rooftop solar energy system for his home. *See* EFC 20 at 4, 5, 8. Setting aside the legal infirmity of Mr. Seto's argument, the simple answer is that the Department of Education did not certify Mr. Seto's student loan debt to the Department of the Treasury until February 15, 2019 – two days *after* the IRS processed and remitted Mr. Seto's 2018 federal income tax refund. *Compare* ECF 16-1 at A178 *with id.* at A118-19. Consequently, there was nothing for the Department of the Treasury to act upon prior to February 15, 2019.

*Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). When challenged by the defendant or raised *sua sponte* by the court, the plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Id.* (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).

  2. Plaintiff's Claims for Injunctive Relief

This Court's authority to hear cases and controversies is conferred by the Tucker Act, 28 U.S.C. § 1491, which grants the Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* To assert a viable claim in this Court, moreover, "a plaintiff must identify a separate course of substantive law that creates a right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*).

In this case, Mr. Seto seeks an order of this Court directing the Department of Education to retroactively recalculate Mr. Seto's outstanding student loan debt by applying all payments made since 2013 toward the principal of his student loans rather than the interest, and to re-enroll Mr. Seto in the Department of Education's Loan Rehabilitation Program. ECF 1 at 5. Such claims for pure injunctive relief fall outside this Court's jurisdiction.[3] *See Johnson v. United States*, 105 Fed. Cl. 85, 95-96 (2012) ("The Federal Circuit has unambiguously held that cancellation of debt does not constitute monetary damages.") (citing *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940 (Fed. Cir. 2007)); *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1999) (claims for injunctive relief lie outside the jurisdiction of the Court of Federal Claims). Accordingly, Mr. Seto's claims for injunctive relief are dismissed for lack of jurisdiction.

## CONCLUSION

For the reasons stated herein, defendant's motion for summary judgment and to dismiss (ECF 16) is **GRANTED** and plaintiff's cross-motion for summary judgment (ECF 20) is **DENIED**. The Clerk's Office is directed to **ENTER** final judgment accordingly. No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge

---

[3] In any event, as explained above, the application of Mr. Seto's monthly student loan payments to accruing interest prior to paying down the principal is consistent with governing regulations. As for Mr. Seto's re-enrollment request, the Loan Rehabilitation Program is available "one time per loan." *See* 20 U.S.C. § 1078-6(a)(5); *see also* 34 C.F.R. § 685.211(f)(12) ("Effective for any defaulted Direct Loan that is rehabilitated on or after August 14, 2008, the borrower cannot rehabilitate the loan again if the loan returns to default status following the rehabilitation."); 34 C.F.R. § 682.405(a)(4) (same for FFEL loans).